JOHNSTON v. TVEDT.

(District Court, S. D. Maine. August 1, 1917.)

No. 771.

1. PATENTS ⬥328—VALIDITY AND INFRINGEMENT—BUILDING MATERIAL.
    The Cottom patent, No. 650,824, for an improvement in building material, was not anticipated, discloses invention and is valid; also *held* infringed.

2. PATENTS ⬥56—ANTICIPATION—POSSIBLE FUNCTIONS OF PRIOR DEVICE.
    In order to constitute anticipation of a patented invention it is not sufficient that the device relied upon might with some change be made to accomplish the functions performed by that invention if it were not designed by its maker to accomplish it or actually used for its accomplishment.

In Equity. Suit by Walter D. Johnston against Samuel M. Tvedt. On final hearing. Decree for complainant.

McGillicuddy & Morey, of Lewiston, Me., for plaintiff.
Harold H. Bourne, of Kennebunk, Me., for defendant.

HALE, District Judge. [1] This suit in equity alleges infringement of letters patent of the United States, No. 650,824, issued to James B. Cottom, of which, by assignment, the plaintiff is the owner. The patent relates to improvements in building material. In the specification the patentee thus briefly describes the purposes of his invention:

"My invention relates to new and useful improvements in building material, and comprises a specially-constructed building-block and means for cementing or uniting such blocks to form one continuous solid wall, which may or may not be provided throughout with ventilating-openings.

"The object of the invention is to provide a building-block which closely resembles free-stone in appearance and approximates or equals granite in point of durability."

The complainant alleges infringement of claim 1 of the patent, which is as follows:

"1. The herein-described building-block, consisting of a cement block having recesses formed in the ends thereof adapted to receive semiliquid cement by means of which the adjacent ends of said blocks are doweled, and the bodies of said blocks having one or more openings therein of a funnel-shaped struc-

ture which are adapted .to receive semiliquid cement, the said funnel-shaped openings forming continuous openings extending from the top to the bottom of a wall and by means of which a continuous body of cement may be placed to rigidly secure said blocks from top to bottom of a wall, and air-spaces formed in said cement bodies, substantially as described."

The defendant says that the claim in suit is invalid by reason of anticipation, and that, in view of the state of the prior' art, such claim does not disclose invention. Three patents are cited as anticipatory, namely: Patent to Josef Julius Hesz, No. 497,959, dated May 23, 1893, relating to the manufacture of bricks for building and other purposes; patent to Julia E. Meyenberg, No. 543,582, dated July 30, 1895, relating to building-blocks and improvements in same of the character employed in the construction of floor arches, ceilings, and roofs; patent to James T. Wilson, No. 635,906, dated October 31, 1899, for improvements in the construction of harbor work, docks, wharves, breakwaters, sea walls, bulkheads, and other submarine work.

From an examination of the patentee's specification, it appears that his inventive idea was to make a cement building-block pressed in suitable moulds and given an ornamental surface to resemble free-stone, or other building stone. The patentee thus describes his method of constructing the blocks and putting them together:

"In each of said blocks there is one or more openings, extending through said blocks, and the upper and lower ends of which are flaring or enlarged in funnel shape, and the central part of which is narrow or contracted, so that a suitable entrance-space is provided for the cement to pass in and through said openings. When the blocks are placed, one upon the other, in constructing a wall, these openings are in a vertical line with each other; and in laying the blocks cement of a thin or semiliquid consistency is poured therein as each block is laid, as above set forth. In pouring the cement in these openings it may be agitated by means of a suitable implement, and this enables the cement to gravitate through said openings and enter the space between the adjacent upper .and lower blocks and fill said space and openings, thus firmly uniting the blocks from top to bottom of the wall. The ends of said blocks are provided with vertical openings which may be constructed in a variety of ways; or the adjacent ends of the blocks may be constructed in any way that embodies the principle of a male and female joint. These end openings do not extend in a vertical line through the entire wall; but, on the contrary, the ends thereof are closed by upper and lower blocks. The semiliquid cement is poured between the adjacent ends of the blocks and allowed to enter and fill these openings, and when said cement sets or becomes hardened there is formed a series of dowels which firmly unite the ends of the blocks against any possible lateral movement. When the blocks are thus laid in the construction of a wall, it will be observed that each block does not depend for its security. on the mortar or cement as usually applied between the faces of bricks, but, on the contrary, have 'cement bars,' so to speak, which extend through them at two points in the body of each block and also which securely unites the ends of said blocks to form one continuous horizontal row of blocks, which practically become in point of rigidity one continuous sill and which have all the advantages in point of durability of the costly stone that is used in the construction of the more expensive buildings."

The claim presents two distinct elements. The block must have: First, recesses in the ends, adapted to receive semiliquid cement, by means of which the adjacent ends of the blocks are doweled together, so that, when the blocks are assembled, they will make a ·firm and rigid wall, the hardened cement constituting a rigid bar extending through them to make a firm wall; second, the other element consisting of

one or more openings in each block, of a funnel shape, these openings making a continuous passage extending from the top to the bottom of a wall, and making an air space, to provide ventilation and to receive, at the top and bottom of each block, the semiliquid cement which holds, or helps to hold, the blocks together, but which does not fill up the air space or prevent ventilation.

Now, looking at the patents which are cited in the prior art, I find that the Hesz patent relates to the manufacture of bricks for building. The inventor thus describes the object of his invention:

"The principal objects of my invention are: First, to provide an ornamental neat, durable, and efficient brick for building and other purposes; second, to provide a brick having openings in the body thereof, and with recesses or channels in the peripheral surface for the reception of tie-rods and distance-pieces at the union of the edges of the bricks with each other, and to provide a brick with openings extending through the body thereof and with peripheral recesses or channels and tie-rods or pieces adapted for insertion through the openings and recesses or channels of the united bricks, and perforated sheets, or plates, adapted to the surface or face of the brick for resisting sidewise strain or pressure, and for maintaining the tie-rods in proper position in respect to the bricks."

In this patent the openings in the body of the block are not for the purpose of admitting air, but for the purpose of inserting rigid pins or cores to make the blocks solid. These holes or openings do not present the same purpose as the funnel-shaped openings in the plaintiff's block. They represent an entirely different inventive thought. When the bricks of Hesz's patent are put together, they make a rigid wall by means of the openings which are filled with pins or cores. In the plaintiff's structure this rigidity is made by the dowels at the ends of each block, and the openings in the body of the block are for a distinctly different purpose. I am of the opinion that the Hesz inventive thought is not anticipatory of the inventive thought of the Cottom patent. The openings in the body of the block are for a different purpose from those of Cottom. The patent presents also a different combination from that found in the specification and claim of the Cottom patent.

The Meyenberg patent is for ceilings, floor arches, and similar constructions. The leading feature in this patent is the use of tongues and grooves extending the full width of the building-block, from the top to the bottom, and interlocking with the adjacent tongues and grooves of the block, fitted alongside the same when the blocks are assembled. The patentee says:

"These interlocking tongues and grooves serve to securely lock the assembled blocks together, and act in the capacity of keys, wedging fast, under any strain unevenly distributed on the blocks."

[2] Meyenberg also provides beveled ends, one of which is provided with an inclined end, locking the groove, and with a projected, inclined end, locking the tongue. This presents different means of uniting the blocks from the rigid cement bars at the ends of the plaintiff's blocks. The Meyenberg method of producing rigidity is distinctly different from that of the Cottom patent; so different, it seems to me, that it would not suggest to the ordinary mechanic any device found in that patent. The fact that rigidity is achieved by a prior patent, as

well as by the Cottom patent, is not enough to constitute anticipation. In order to constitute anticipation of a patented invention, it is not sufficient that the device relied upon might, with some change, be made to accomplish the functions performed by that invention, if it were not designed by its maker to accomplish it, nor actually used for its accomplishment. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

The Wilson patent is for submarine work. Here the openings in the blocks are filled with cinders to give them solidity. No air-spaces are provided, as in the plaintiff's blocks. The Cottom method of providing rigidity by his doweled cement ends is entirely absent from the Wilson device, and is not anticipatory of it.

The invention of Cottom was not intended to be a broad invention. It related simply to certain improvements in means of making building-blocks. So far as anything appears in the record, Cottom was entitled to the means which he employed to effect the ends which he proposed; the patentees in the patents cited were also entitled to the means which they severally employed to effect their ends. Walker on Patents (4th Ed.) § 117A.

From an examination of all the patents brought before me in the prior art, I am of the opinion that the Cottom patent must be held to present an inventive thought not before presented in any other patent brought to my attention.

So far as anything appears in the record, I find the plaintiff's patent has not been anticipated, and that claim 1 of the patent discloses invention.

It is admitted, and the whole case proceeds upon the assumption, that the defendant has infringed the plaintiff's patent, unless such patent is anticipated by the patents cited in the prior art.

I therefore find that the plaintiff's patent is valid; that it discloses invention; and that it has been infringed by the defendant.

It is admitted by counsel that, if the court comes to the question of damages, such damages may be fixed at the sum of $500; and thus further expenses may be avoided.

Let the plaintiff file a draft decree on or before August 11, 1917, not inconsistent with this opinion. Defendant may present corrections, if any, not later than August 15, 1917. The decree may be passed August 18, 1917.

The plaintiff recovers costs.