UNITED STATES LIGHT & HEAT CORPORATION v. SAFETY CAR
HEATING & LIGHTING CO.

(Circuit Court of Appeals, Second Circuit.  November 18, 1919.)

No. 27.

1. PATENTS ⬤⟳165—EXTENT OF PATENT MUST BE MEASURED BY CLAIM.

The object of the patent law is to secure to the inventor all to which he is entitled, also to apprise the public as to what is still left open to them; so the claim of the patent must be the measure of the patentee's rights.

2. PATENTS ⬤⟳167(2)—CLAIMS CANNOT BE EXTENDED BY REFERENCE TO SPECIFICATION.

The specifications of a patent may be referred to, to limit the claim, but are not available to extend it.

3. PATENTS ⬤⟳328—PATENT FOR CAR LIGHTING NOT INFRINGED.

The McElroy, patent, No. 983,158, claims 5, 7, 8, and 9, for a method of car lighting, which used a belt-driven -dynamo, *held* not infringed by a device manufactured pursuant to the Thomas patent, No. 1,154,671; the McElroy patent, which provided a method for maintaining constant belt tension, being limited by the prior art, and, as limited, not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the United States Light & Heat Corporation against the Safety Car Heating & Lighting Company.  From a decree for defendant, plaintiff appeals.  Affirmed.

Everett N. Curtis, of New York City (W. Clyde Jones and Arthur B. Seibold, both of Chicago, Ill., and Raymond H. Van Nest, of Niagara Falls, N. Y., of counsel), for appellant.

Emery, Booth, Janney & Varney, of New York City (T. J. Johnston and Robert S. Blair, both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.  This is a suit for infringement of patent.  United States letters patent No. 983,158, were granted on July 31, 1911, to James F. McElroy.  The invention concerns the method of car lighting, and has to do with the mounting of dynamos upon railway vehicles, and particularly to such mounting of the dynamo that it may be driven from one of the car axles by means of a belt.  It involves the suspension of a generator from a railway passenger car; the generator being used in the art of electric train lighting upon cars propelled by steam and which do not have some traveling connection with a stationary source of electric supply.  The problem involved relates to the constant connection between the generator and the axle pulley.  The desire is that the belt connection shall have adequate tension, to enable it to rotate the generator at all proper speeds, and that for this purpose the tension upon the belt under all the varying circumstances of use shall be as nearly as possible uniform.  It is intended to provide against the stretching of the belt, which is

an inevitable incident of the transmission of power by the belt method, and the varying distance between the pulley on the axle and that upon the generator shaft. The stretching is due to the shifting of the relative position of the pulleys from irregularities in the track and from the passage of the car around curves.

One method of suspension is to place the generator directly upon the truck of the car. This is done by supporting devices within the beams of the truck between the axles or adjacent to one of them, sometimes by such devices projecting beyond the truck toward the middle of the car. The distances between the axle pulley and the dynamo do not vary greatly, and the variations are practically due to the lost motion in the device and the stretching of the belt. This method has its disadvantages. A second method of suspension is referred to as a body-hung generator. Here the generator is fixed, by suitable supporting devices, to the body of the car at a distance from the truck and height above it which make the belt longer than with the truck suspension, and which consequently give a greater arc of contact with the small pulley under the generator axle tending to diminish the slip.

Claims 5, 7, 8, and 9 are involved, and read as follows:

"5. The combination with an axle, of a dynamo belted thereto, an adjustable support for the dynamo upon which the dynamo is rotatably mounted, and a self-adjusting spring for imposing a substantially constant tension on the belt."

"7. The combination with an axle, of a dynamo belted thereto, a support for the dynamo upon which it is rotatably mounted, and a spring tending to rotate the dynamo on its support and acting along a line eccentric with respect to the axis of the rotation of the dynamo but changeable in position with respect to such axis, whereby the leverage of the spring varies substantially inversely as its tension.

"8. The combination with an axle, of a dynamo belted thereto, a support for the dynamo upon which it is rotatably mounted, a spring tending to rotate the dynamo around its axis of rotation in a direction away from the axle, and a pivotal mounting for the spring whereby the line of action of the spring varies as the dynamo is rotated on its axis to increase its leverage as the dynamo receded from the axle.

"9. The combination with an axle, of a dynamo belted thereto, a support for the dynamo upon which it is rotatably mounted, a spring tending to rotate the dynamo on its axis, and connections for the spring permitting it to act upon the dynamo on a changing leverage increasing as the belt slackens as the dynamo is drawn farther from the axle."

The belt-driven dynamo in the car-lighting art has been fraught with difficulties. By stretching, it would loosen and finally would have insufficient contact, so that it would fail to drive the generator. In practice, this difficulty was overcome by suspending the generator on a pivot and swinging it on an angle, so as to permit the weight of the dynamo to assist in keeping the belt tight. As the belt stretched, there would result a rotation of the dynamo away from the car axle until the dynamo hung vertical, and this resulted in a lack of pressure by its weight upon the belt. To obviate this, there was a manual adjustment provided for, and this required frequent attention at stations along the line the railroad cars traveled. Later a spring was employed to hold the dynamo in such a position so that the shaft of the

dynamo would bear upon the belt and the generator could not slip. As an improvement in the art, the appellant claims that it has so located the spring relative to the pivot of the dynamo that, as the weight moment decreased by the swinging of the dynamo away from the car axle, the spring effect increased by the lengthening of the lever arm upon which the spring operated, claiming that an automatic belt tension resulted from the equalization of forces. Thus it is said, manual adjustment is eliminated.

The patent provides, as means for neutralizing weight variations:

"I also mount the dynamo upon a pivotal support, the axis of rotation of the dynamo being within the body of the dynamo itself, whereby the aforesaid tension device may take up slack in the belt and at the same time the tendency of the dynamo to swing upon its supports under sudden shocks is practically eliminated. * * *

"It should be observed at this point that this axis of rotation is within the body of the dynamo and is as close to the center of gravity thereof as is consistent with the tensioning of the belt by means to be hereinafter described. The purpose of this is to reduce the tendency of the machine to swing to and fro under the impulse given by the sudden starting of the cars in one direction or the other and the bumping against other cars, and similar causes. Of course, if the dynamo were suspended exactly at the center of gravity, such shocks would have no effect toward causing the dynamo to rotate on its supports—in other words, its suspension would be neutral with respect to shocks of that kind. It is my object to approximate as closely as possible to this neutral support by mounting the pivots upon which the dynamo hangs as nearly to the center as may be permissible under the circumstances. * * *

"It will be manifest that the result of my construction as thus far described is to relieve the belt from all unequal strains. For example, the above-described hanging of the dynamo upon the axis of the rotation lying within the body of the dynamo relieves the belt from the sudden and excessive strains which would result if the dynamo were pivoted at a point either above or below it. In such case a shock tending to swing the dynamo away from the truck would produce a sudden and abnormal strain on the belt, whereas a shock tending to swing the dynamo toward the truck would first slacken up the belt, but the rebound to the action of the spring would produce a heavy blow on the belt tending to snap it in two."

Claim 11 of the patent referred to the axis of rotation of the dynamo on its support upon which the dynamo swings being within the body of the dynamo and approximately at its center of gravity. Claim 11 makes use of this expression:

"An adjustable support upon which the dynamo swings upon an axis lying within the body of the dynamo approximating in position to the center of gravity thereof."

We think the patent was intended to eliminate, as far as possible, the weight factor, and that the spring was the only tension device within the scope of the patentee's invention. The spring was not allowed to vary in its effect on the belt and the component of tension, due to the spring, was maintained constant intentionally by an arrangement of the spring and lever. If there were present in this structure a variation of weight effect, then there were three variables, and not two, and the sum of two of these variables was maintained constant; so that if the weight effect did vary, as claimed by the appellant, it was known to the inventor, and he seems to have entirely overlooked or ignored the idea, for he employed the spring

and lever to obtain a constant spring tension. He speaks, in his description of the spring, as providing "a self-adjusting tension device by means of which the tension on the belt is maintained constantly uniform in spite of variations in the length of the belt by stretching or other causes," and again (page 2, line 72, of the patent) :

"Moreover, by means of self-adjusting tension' device above described, the belt is kept equally taut."

He expresses the same ideas in the claims, and speaks of the constant spring tension. All of the expressions of the patent indicate the thought of the patentee that the entire effect of the belt tension was due to the spring, and it is the spring and lever which form the self-adjusting tension device; it is the spring which exerts the same tension upon the belt. The patent discloses the combination of three instrumentalities, one of them being the pivot dynamo so arranged as to have substantially no weight effect and no variation therein; the others being the spring and the lever and inverse relation to the spring so that the spring moment upon the belt would be constant. There is nothing in the patent indicating that the patentee wishes to employ a weight effect. Indeed, it is thought that so far as it may exist, it will be minimized as far as possible. There is provided in the specification, an elimination of the weight to prevent strain from swinging and the patentee places the claims to the invention upon the constant spring effect alone.

[1, 2]. The specifications and claims must be read to mean what they say, and the device which they specify must be shown to be the one which produces the effect which they specify. The object of the patent law is to secure to the inventor all to which he is entitled, and it is also intended to apprise the public of what is still left open to them. The claim must be the measure of the patentee's right to relief. The specification may be referred to limit the claim, but it can never be available to expand it. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800.

[3] Nowhere in the patent is the weight or weight moment referred to, nor is it provided that the weight tension shall play a part in the accomplishment of the idea; nor does the patentee make use of an expression indicating that the belt tension may be due to weight. Nor is there anything which indicates a spring tension plus weight. Thus, we must conclude that there is nothing indicating that the patentee considered that there was any variability due to changes in the weight moment. What he does provide is for a leverage arrangement expressly designed to eliminate this variation and to render the spring effect as nearly as possible constant. His intentions must be obtained from the language employed, and we cannot read into the patent some modification to aid the claim of invention or infringement. Gibbons v. Ogden, 22 U. S. (9 Wheat.) 1, 6 L. Ed. 23.

The appellee makes its device pursuant to the Thomson patent No. 1,154,671. In this device, the dynamo is hung as nearly vertical as possible. The generator is tilted toward the axle, and this is due to the

particular necessities rather than an idea of an ideal arrangement, as claimed to be disclosed in the patent. The appellant's device takes fully into consideration the variation of the moment of the weight of the generator upon the belt tension. There is no limitation upon the variations of the weight moment. It is an inevitable consequence of the appellant's mounting that the weight moment shall vary over a very wide range. The generator is hung on an arm and swings back and forth like a pendulum, except as it is restrained by its weight and the tension of the belt. As it approached the axle to which the belt is connected, the weight effect enormously increased because the generator begins to swing up horizontally. As it recedes from the axle, the weight effect diminishes. To compensate for this variation, there is provided a spring and lever like the instruments of the patent in suit. Thomson so apportioned his lever and spring and so arranged his connection to the generator that he obtained an inconstant spring generator, which is widely varied and which from the nature of the problem must vary as widely as does the weight moment of the generator upon the belt, but in the opposite direction. He did not obtain a constant spring pressure as was the appellant's inventor's idea. If he had, his device would have been inoperative. He provides that his weight moment and his spring moment shall be inverse functions with one another. As we have observed, the specifications and claims of the appellant cannot be so read as to cover the ideas disclosed by the Thomson patent.

But appellant's claim of what the Thomson patent discloses is fully presented in the specifications and claims as written for the Thomson patent. The specifications provide:

"From the operative position indicated in dotted lines it will be seen that the weight acts as a factor in tending to maintain the belt in the desired taut condition. .The effect of the weight, however, is auxiliary to that of a spring *21* which is stretched between a pin *24* secured within a bracket *25* which is bolted to the depending lug *26* on the supporting casting *9*. This spring tends to swing the generator in a direction away from the car truck and is so positioned with respect to the axis of pin *12* that its effect varies as the generator swings downward toward its lowermost position and increases due to the increase of its effective arm. This will be understood by considering the position of the arm *23* indicated in dotted lines at *27* on Fig. 1 of the drawing in which extreme position the spring has small effect as it pulls almost through the axis about which the generator swings. The various parts are so proportioned that the total retractive effect of the weight of the generator and of the spring *21* is substantially constant for all operative positions of the generator and hence when the position of the latter changes, as upon the truck swinging in rounding curves or for other reason, there is no material alteration in the belt tension."

"That is, the total effect of the weight and the spring is substantially constant for all operative positions, of the generator."

"9. In car-lighting apparatus, in combination, a car truck; a generator mounted to move toward and away from said truck; means adapted to drive said generator from an axle of said truck; a spring mounted to urge said generator away from said axle and coacting with the weight of said generator in exerting a substantially constant force upon said driving means in all operative positions of said generator; and means adapted to prevent the return of said spring to undistorted condition irrespective of the position of said generator."

The Kennedy and Newbold patents of the prior art show the generator supported from the bottom, and therefore show that the weight effect increases as the generator tilts away from the axle; the spring effect in consequence decreasing so as to make at least some proximation to a balance without any use of levers, straight or belt crank. The idea of using the spring and weight of the generator in connection with the car axle and a belt connection in such a way as to maintain a tension upon the belt is disclosed by these patents to be old, and it is only some novel combination of these elements which might be the subject of new letters patent. A constant belt tension was obtained by such devices of the prior art, as is in the Thomson devices. These devices had inherently a compensation by which the spring partially collapsed as the weight function increased.

The eccentric location of the spring with reference to the point of suspension of the dynamo, shown in the dynamo, indicates nothing except to obtain a constant belt tension while eliminating the weight factor as far as possible. If the decrease in the weight tension was equalized by the increasing spring tension, it could not be, as claimed by the appellant, that the mechanism is "one whereby the leverage of the spring varies substantially inversely as its tension."

Claim 8 differs from claim 7 only in pivotal mounting for the spring. It is necessary to use some form of flexible attachment to the spring to support the dynamo. This is provided for in claim 7. It is a mechanical necessity. The difference, thus mounting pivotally, does not involve invention. Undoubtedly, it was the idea of the inventor of appellant's device to eliminate as much as possible the weight effect. The center of oscillation was within the dynamo. We are of the opinion that the appellee's device does not infringe, and that there is this difference between the appellant's and appellee's devices; the former is based upon compensation of spring and weight effect, while the latter upon constant spring effect alone and with the axis of rotation within the dynamo. The appellee's axis of rotation is not within the dynamo. Indeed, we are forced to the conclusion that, considering the art, the appellant has not contributed to the art.

The decree will be affirmed.