## YOUNG RADIATOR CO. v. MODINE MFG. CO.

### No. 4536.

Circuit Court of Appeals, Seventh Circuit.

Dec. 28, 1931.

Rehearing Denied Feb. 26, 1932.

William E. Anderson and Cyril A. Soans, both of Chicago, Ill., for appellant.

Louis Quarles, of Milwaukee, Wis., and John W. Hill and Roy W. Hill, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is a patent infringement suit. It involves an infringement of claims 5 to 15, inclusive, 18 to 22, inclusive, and 24 and 27 of patent No. 1,726,275, filed May 6, 1925, and issued on the application of A. B. Modine on August 27, 1929. The defenses are invalidity and noninfringement, and the court found that the patent was both valid and infringed as to each claim relied upon.

The patent relates to a heating apparatus particularly adapted for use in large shops, assembly halls, auditoriums, gymnasiums, and like structures, but may be used wherever found applicable.

Claim 5 is as follows: "In combination with a fluid supply pipe, a manifold communicating with and carried by the pipe, a heating unit communicating with the manifold and supported thereby, and means carried solely by the manifold for advancing air through the heating unit."

Claim 6 is typical of claims 7, 10, 13, 14, 21, 22, and 24, and is as follows: "In apparatus of the kind described, a frame, a radiator unit carried by the frame, means carried by the frame for advancing air through said radiator unit, and means for suspending the frame from a fluid supply

pipe, said radiator unit being in communication with said supply pipe."

Claim 20 is typical of claims 8, 9, 11, 12, 15, 19, and 20, and is as follows: "In apparatus of the kind described, a radiator, means for advancing air through said radiator, tubular means including adjustable means for supporting said radiator and said air advancing means as a unit from a fluid supply pipe, said radiator being in communication with said pipe through said tubular means, a second tubular means including adjustable means for connecting said radiator to a drain, said second tubular means being aligned with the first-mentioned tubular means in such manner that said radiator and said air advancing means may be adjusted as a unit around an axis of rotation."

Claims 18 and 27 are as follows:

"18. In apparatus of the kind described and in combination, a heating unit, means for advancing air therethrough, adjustable means for deflecting the air as it passes from the heating unit, and tubular means for suspending said heating unit, said air advancing means and said deflecting means as a unit from a fluid supply pipe, said tubular means including adjustable means whereby said heating unit, said air advancing means and said deflecting means may be adjusted as a unit around an axis of rotation."

"27. A heat exchange unit of the character described adapted to be supported from an overhead support, said unit comprising a casing, a heating element and a motor and fan associated therewith and fixedly secured with respect thereto, means for supplying heating media to the heating element, adjustable means for supporting the unit to the overhead support whereby the unit may be fixedly secured in any one of a plurality of predetermined positions to discharge heated air."

■ In discussing the validity of the patent in suit, it may be admitted that all the elements in appellee's structure were old in the art. Appellee claims, however, that its structure is a new combination of these elements which produces a novel and useful result (or an old result in a more facile, economical, and efficient way). If this be true, it is sufficient to uphold the patent. New York Scaffolding Co. v. Whitney (C. C. A.) 224 F. 452.

There are three principal things or uses which appellee claims to have accomplished by its patent, and which it claims are new to the art:

(1) In attaching a combination heater and fan to a steam or water pipe in such a way as to operate the heater, it is quite necessary to provide for the expansion and contraction of the main steam or water pipe, in order to avoid tearing the heater from its moorings. This was done, prior to appellee's patent, by means of an expansion joint or similar device placed in the pipe connecting the heater to the main steam or water pipe. Appellee's structure avoids the expansion joint by not attaching the heater to the ceiling or wall, or to anything else except the main steam or water pipe. From this the heater is suspended and held by the connecting pipe, through which the heat is applied to the heater. There being only one point of contact with the supply pipe, and the heater having no other connection, it of course follows the contraction and expansion of the supply pipe without resistance.

(2) Appellee's structure eliminates the inconvenience of drilling into the ceilings of buildings and locating beams and girders for the purpose of fastening the heater to them, and permits the location of the heater at any place in the room where such attachment to the main pipe may be secured.

(3) By adjustable means placed in the connecting pipe, which in the physical exhibit is a couple of unions, the heater can be easily turned to face in any direction in which the heat is most desired.

Thus it is readily observed that the new and beneficial results obtained by appellee's invention are due to the method in which the combination of old elements, as a whole, is installed, and not to any new function of any of the old elements themselves. For instance, the matters of expansion of the supply pipe and the inconvenience of attachment to girders, walls, or ceiling are overcome by attaching the entire structure to the supply pipe alone. Lateral rotation of the structure when thus attached is accomplished by placing two unions in the feed pipe which connects the structure with the supply pipe, and thus by the use of a wrench the heater may be turned to face in any direction.

■ Appellant has cited several unit heaters which it regards as prior art to appellee's patent, viz., Wing, Comet, United States Cartridge Company, Venturafin, Hawkins No. 676,950, Junkers No. 1,208,790, Marlot No. 1,200,745, Modine No. 1,666,907, Frank No. 1,295,151, Sturtevant No. 100,241, and

others which perhaps show that each of the elements of appellee's structure is old in the art; but conceding that much, we are convinced, from a consideration of all prior art cited, that appellee, by its combination of old elements which it attached directly and solely to the steam or water supply pipe, produced a novel and decidedly new result, and one well worthy of the patent issued. In none of the citations which in any manner could be considered applicable was it ever contemplated that the structure should be supported by a supply pipe alone. It is true that in the United States Cartridge Company device several heaters, without fan or motor, were thus supported for the purpose of testing the heaters; but there was no thought on the part of the inventor permanently to install the structure without a rigid attachment to the building. It is also true that several of the heaters cited were sufficiently light in structure to have been supported by the supply pipe alone, but they were not in any instance so supported when installed for use.

■ It is not sufficient to constitute anticipation that the device relied on for that purpose might, by modification, be made to accomplish the function performed by the patent in question if it were not so designated by its maker, nor adapted nor actually used for the performance of such function. Triumph Trap Co. v. Oneida Community Co. (D. C.) 279 F. 142; H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 F. 415; Johnston v. Tvedt (D. C.) 244 F. 189.

■ The earlier printed and published description of a subject of a patent which is put in evidence to invalidate another patent must be in terms that would enable a person skilled in the art or science to which it pertains to make, construct, and practice the invention as completely as he could do by the aid of information derived from a prior patent; and unless the description is sufficiently full to enable such person to comprehend it without assistance from a patent, or to make the invention or repeat the process claimed, it is insufficient to invalidate the patent. Downton v. Yeager Milling Co., 108 U. S. 466, 3 S. Ct. 10, 27 L. Ed. 789.

Whatever may be said of the simplicity of appellee's device and the readiness with which a mechanic might anticipate such use of the old elements involved, the fact remains that for more than half a century no mechanic, so far as the record shows, had ever suggested such use. We are convinced therefore that the patent is valid.

It is next contended on the part of appellant that its device is not an infringement of appellee's patent. Each structure is a combination of heater, fan, and motor, and for all practical purposes they are almost identical in construction and operation. The weights of the structures are not radically different, and each is sufficiently light to be suspended from the supply pipe without other support. In each device the center of gravity of the heating unit is directly below the means for attachment to the supply pipe. In other words, both are supported symmetrically to avoid torsion strains and eccentric loading results.

Up to a short time prior to the hearing in the District Court, each structure had a vertical axial alinement of the inlet and outlet through the center of the heating unit. This feature is quite necessary to permit rotation of the unit if the ends of the axis are rigidly attached to the supply and outlet pipes. The features of symmetrical support and axial alinement are covered by appellee's claims. Shortly before the trial appellant claimed to have eliminated the axial alinement from its device by placing the outlet opening an inch and a half out of alinement from the inlet. This would unquestionably prevent rotation unless the inlet and outlet were again brought into alinement, which can be accomplished very easily by the use of a standard one and one-half inch set-off fitting. This fact seems to us to be somewhat significant as bearing on appellant's intention, which will be later noted in this opinion.

Appellant's device is comprised of a radiator, and upper and lower header tank, air advancing means connected with one of the header tanks, the header tanks respectively being provided with openings for the reception of a fluid supply pipe and having means when installed for use whereby the entire unit may be adjusted about an axis defined by the axis of the supply pipe and the return pipe. It has side plates which extend from the upper to the lower header tank and which are connected therewith.

Appellant contends that inasmuch as its device comprises only a single radiator it is not necessary for appellant to use either a manifold or a radiator frame, and denies that it uses either. The metal chambers which appellant refers to as header tanks are formed by hollow castings having openings to receive respectively a fluid supply

and a return pipe. The sides of these castings which are adjacent to the radiator core are each closed with a header plate having more than 50 openings, into which the radiator tubes are brazed. These plates are firmly bolted to the flat sides of the hollow castings. These tanks thus assembled have a single opening for attachment· to the inlet and exhaust pipes respectively, and a plurality of openings which communicate with the radiator tubes, and they constitute manifolds according to the definition of·that term as given by all lexicographers so far as we are able to ascertain.

■ The fact that appellee in one form of its device used a manifold to connect two radiator units is not a limitation on its invention. That its structure is not limited to that particular form is quite apparent from the specification and claims. The invention and the mode of putting it to particular use must be described, but the claims measure the invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Harvey Hubbell, Inc., v. General Electric Co. (C. C. A.) 267 F. 564; Fulton Co. v. Powers Regulator Co. (C. C. A.) 263 F. 578; United States Light & Heat Corp. v. Safety Car·Heating & Lighting Co. (C. C. A.) 261 F. 915.

Appellant further contends that it has not infringed claim 6 inasmuch as its device has no frame. We think this contention is without merit. Its structure is supported and held together by two side plates and the header tanks or manifolds, and these four elements clearly constitute the frame which carries the louvers, the radiator assembly, and the fan with its supporting arm. We think that each claim in controversy reads perfectly upon appellant's device.

■ It is claimed, however, by appellant that it neither manufactures nor sells any fittings with which to install its structures, and that it has nothing whatever to do with the installation of them. It may be admitted that appellant manufactures and sells nothing but the unit heaters, yet appellant will be guilty of contributory infringement if it manufactures and sells an· article capable of being installed in either an infringing or a noninfringing manner, and if it materially contributes to the installation or use of the article in an infringing manner—and this is true whether the contributing conduct be either direct or indirect.

·The record in this respect shows that the bill of complaint was filed January 14, 1930; that up to the latter part of October, 1929, appellant, in its advertising Bulletin H-429, stated that the Young Unit heater "is comparatively light and can be suspended from the steam mains without additional bracket or rod supports, making it possible to face the unit in any direction desired." The bulletin referred to contained also the following: "Our district representatives are trained men who will assist you in the planning and laying-out of your heating· and ventilating problems." After October, 1929, upon notice from appellee, the first statement was omitted from the bulletin.

Appellant's methods of sale are described by Mr. Young as follows:

"To my knowledge, the Young Radiator Company, I, or any one in our employ, never told any of our customers to use any pipe unions, or any certain kind of fittings in connection with our product. * * *

"Q. 37. At the present time does the Young Radiator Company advise any of its customers to suspend its product from a fluid supply pipe?

"A. We don't have any occasion to discuss that with them. That is up to the contractor who takes the job, as to how he wishes to suspend it. * * * I have inspected buildings recently * * * having installed therein either a Modine unit heater or the Young unit heater. The T. M. E. R. & L. Terminal building has both.

"Q. 43. Do you know how they are supported?"

Upon objection by counsel for appellee a colloquy ensued between counsel, and the court said: "The difficulty is that it may be true that some of the structures are supported in an infringing way, and others in a noninfringing way. The question still here is as to what may be said as to the manufacture or sale of structures susceptible of being supported either way."

Counsel for appellant said he desired to show that most of the customers are carrying out appellant's instructions at the present time and that there is no infringement—on the theory that when a manufacturer sells a device which is capable of use in an infringing as well as a noninfringing way, and instructs the purchasers how to use it in a noninfringing way, and intends that it shall be used in that way, there is neither direct nor contributory infringement. Witness was thereupon permitted to answer

the question and cited several instances where appellant's device was supported by means other than the supply pipe, and no instance where the device was supported by the supply pipe alone.

On the other hand, appellee introduced evidence of instances in which appellant's device was sold by it and installed in numbers, and, as claimed by appellee, in such a manner as to constitute infringement of the patent in suit. They are referred to in the record as heaters in the respective plants of S. C. Johnson & Son, and Waisman Auto Supply Company, both of Racine, Wis., and Chicago, Milwaukee, St. Paul & Pacific Railroad Company, of Milwaukee. The unit heaters as installed in both plants at Racine are clearly infringements. They not only possess all the elements of appellee's device, but they are installed in the same manner, they function in the same way, and produce identically the same results as does appellee's device.

The unit heater installed in the plant at Milwaukee has all the elements of appellee's structure and functions in the same manner. It is installed, however, in a somewhat different manner. There are sixty-eight heaters and each is supported by four one-half inch steel rods which are threaded into the upper header tank or manifold of the unit. The upper ends of the rods are secured to plates which are supported on a horizontal angle iron two and one-half inches by two and one-half inches. The central portion of the horizontal angle iron is bolted to a vertical band iron which is one-fourth inch in thickness and three inches in width, the vertical center of which is in alinement with the axis of the heater. The upper end of this vertical band iron is bolted to a pair of angle bars which embrace the building structure. The upper tank or manifold of the radiator is connected to a vertical pipe fitting having an elbow at its upper end which is connected to a horizontal branch pipe leading to the vertical supply pipe. There is no pipe union between the elbow and the upper header tank or manifold, but the lower joint at the elbow and the one at the manifold will permit a limited rotation without leaking, and without disconnecting anything. It is appellee's contention, and the trial court so found, that these heaters are rotatable about a vertical axis by twisting the iron supporting strap. The physical exhibit of this structure shows that its supporting strap is twisted, but the record shows that this was done before installation. Appellant, on the other hand, contends that this heater is neither supported by the supply pipe nor is it rotatable within the meaning of the claims in suit.

Without doubt the expansion of the supply pipe is cared for in these heaters as it is in appellee's device, and it is not in the least hindered by the overhead construction which partly sustains it. We are not convinced, however, that the characteristic of rotatability is present in these heaters as it is in appellee's device, and as it is contemplated in patentee's claims.

We are convinced that the rotation as claimed and as contemplated in appellee's patent is such as is reasonably easy to accomplish with the aid of a wrench. While the ease with which the rotation is accomplished is not mentioned in the claims of patentee, it is mentioned very emphatically in appellee's briefs as a characteristic much to be desired, and easily accomplished. The claims which cover this feature are not specific as to the means, but, so far as the record shows, patentee has always accomplished this result by the use of a couple of unions placed in the vertical pipe which connects the heater with the supply pipe. This sort of construction unquestionably gives rotation, which is easily accomplished by the use of a wrench.

But appellant's structure as installed in the plant at Milwaukee is not so constructed. The vertical connecting pipe which is threaded into the manifold is perhaps twelve inches in length, and the other end is threaded into an elbow which at that point changes the connecting pipe from a vertical to a horizontal position. This horizontal section extends perhaps four or five feet, and another elbow is there used from which the connecting pipe extends upwardly in a vertical position to the supply pipe. There is no union or unions in that part of the vertical connecting pipe which leads from the manifold to the first elbow. It is one continuous pipe, and the ends are threaded respectively into the elbow and manifold. Witness Bowden, however, testified that such construction would permit rotation of the unit. The substance of his testimony is that such rotation can only be accomplished by tightening the threads (with a wrench), if possible, or by loosening them a little, but not enough to cause a leak. In this sense every pipe joined to another by thread can of course in a limited degree be rotated, but we think it is not such rotation as is contemplated in patentee's claims. But before appellant's device which is now under dis-

cussion can be rotated in this manner, the supporting iron strap—which is three inches wide and one-quarter of an inch thick—must be heated with a blowtorch to such an extent that it may be twisted to the position desired.

While appellant's structures in the plant at Milwaukee are attached to the supply pipe, they derive but little support, if any, from it. It is true that the structures are sufficiently light to enable the supply pipe to carry the entire load, but it does not do so. A considerable amount of other construction work has been installed for that purpose, and, so far as we can see, it actually carries the load and is effectively attached to the building. Appellee's combination patent of elements old in the art is preserved to it when such device is supported by the supply pipe.

■■ We do not wish to be understood as holding that one can avoid infringement of appellee's patent by any makeshift attachment to the building which in fact is not an attachment, but which is made in bad faith and for the purpose of circumventing the patent. We feel, however, that the installation of appellant's structures in the Chicago, Milwaukee, St. Paul & Pacific Railroad Company shop at Milwaukee is not in that class, by reason of the fact that there is not such rotatability present as is contemplated by the patent; and by the further fact that the heating unit is not carried by the supply pipe, but is carried almost wholly, if not entirely, by the iron and steel structure which is attached to the building—in what seems to us a rather permanent manner. In all other installations we think the District Court held very properly that there was infringement.

■ We are next confronted with appellant's contention that it was not a party to the infringements and hence is not liable. With this contention we cannot agree. It made use of Bulletin H-429 as an advertisement until the last of October, 1929. It suggested and urged the installation and use of appellant's device in such a manner as to secure the same results, and by the same means, as those employed and used by appellee. It is true that it eliminated this particular instruction from the bulletin a short time before suit was filed, but it had already started a very damaging force in motion, which was bound to be hurtful to appellee. There was evidence given by Mr. Young, who is president of appellant company, from which it is fair to infer that nothing was done in any manner to counteract the effect of Bulletin H-429 as originally sent out. In answer to the question as to whether appellant at the present time advised any of its customers to suspend its product from a fluid pipe line, he said: "We don't have any occasion to discuss that with them. That is up to the contractor who takes the job, as to how he wishes to suspend it."

Under all the circumstances, we are convinced that appellant's conduct contributed to the infringements, and it is liable. Walker on Patents (6th Ed.) par. 457.

The decree of the District Court is affirmed in all respects, except in so far as it holds that the installations of appellant's device in the car shops of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company at Milwaukee constitute infringements, and as to that exception the decree is reversed.

Each party shall pay its own costs in this court.